1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARTHA VILLA,

11              Plaintiff,                         No. 2:12-cv-0094 CKD

12         vs.

13   CAROLYN W. COLVIN,                            <u>ORDER</u>
     Acting Commissioner of Social Security,
14
                Defendant.
15   _____/

16            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

18   under Title XIV of the Social Security Act ("Act").  For the reasons discussed below, the court

19   will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion

20   for summary judgment.

21   <u>BACKGROUND</u>

22            Plaintiff, born on September 11, 1958, applied for SSI on October 6, 2008,

23   alleging disability beginning June 1, 2005.  Administrative Transcript ("AT") 146-153.  Plaintiff

24   alleges that she is unable to work due to glaucoma, fibromyalgia, thyroid problems, depression

25   and psychosis.  AT 167.  In a decision dated October 25, 2010, an Administrative Law Judge

26   \\\\\

                                            1

("ALJ") determined that plaintiff was not disabled.[1]  AT 33.  The ALJ made the following

findings (citations to 20 C.F.R. omitted):

> 1.  The claimant has not engaged in substantial gainful activity since October 6, 2008, the application date.
>
> 2.  The claimant has the following severe impairments: fibromyalgia with neck and back pain, history of seizure disorder, right carpal tunnel syndrome, degenerative disk disease of the lumbar spine, personality disorder, mood disorder, cannabis abuse, opioid dependence, benzo dependence, and borderline intellectual functioning.  The claimant also has the following nonsevere impairments: left carpal tunnel syndrome and rheumatoid arthritis.
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 10 pounds frequently, 20 pounds occasionally, sit for 6 hours in an 8-hour workday, and stand and/or walk for 6 hours in an 8-hour workday.  The claimant is able to frequently handle and finger with right upper extremity, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes or scaffolds.  The claimant should avoid even moderate exposure to hazards such as working at heights and around dangerous machinery.  The claimant can understand, remember and carry out simple job instructions, she can interact appropriately with others and maintain concentration, persistence and pace for simple job tasks.

5.      The claimant is unable to perform any past relevant work.

6.      The claimant was born on September 11, 1958 and was 50 years old, which is defined as a younger individual 18-49,[2] on the date the application was filed.

7.      The claimant has at least a high school education and is able to communicate in English.

8.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     The claimant has not been under a disability, as defined in the Social Security Act, since October 6, 2008, the date the application was filed.

AT 22-33 .

ISSUES PRESENTED

        Plaintiff argues that the ALJ improperly evaluated her mental and physical impairments.  Plaintiff further contends remand is appropriate based on evidence submitted to the

---

        [2]  The reference to the "younger individual" age category appears to be a typographical error in that the ALJ referenced the correct Grid rule (202.13) which is applicable to persons 50 years of age.  AT 32.

1  Appeals Council.

2  LEGAL STANDARDS

3         The court reviews the Commissioner's decision to determine whether (1) it is

4  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

5  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

6  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

7  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

8  as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

9  625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The

10  ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

11  resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations

12  omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more

13  than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

14  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir.

15  1986), and both the evidence that supports and the evidence that detracts from the ALJ's

16  conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may

17  not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id;

18  see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports

19  the administrative findings, or if there is conflicting evidence supporting a finding of either

20  disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d

21  1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was

22  applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

23  /////

24  /////

25  /////

26  /////

1   ANALYSIS

2       A. Mental Impairment

3           Plaintiff contends the ALJ erroneously determined that she does not meet or equal

4   Listing[3] 12.04 (Affective Disorders) or Listing 12.08 (Personality Disorders).  The Listings

5   addressing mental disorders are comprised of two parts, both of which must be met or equaled.

6   The paragraph A criteria determine whether evidence of mental disorder is present.  The

7   paragraph B criteria evaluate the functional loss resulting from the disorder.

8           The paragraph B criteria are the same for Listings 12.04 and 12.08 and require at

9   least two of the following functional limitations:

10                  1.  marked restriction of activities of daily living;

11                  2.  marked difficulties in maintaining social
                        functioning;
12
                    3.  marked difficulties in maintaining concentration,
13                      persistence, or pace; or

14                  4. repeated episodes of decompensation, each of
                       extended duration.
15

16  "Marked" means "more than moderate, but less than extreme."  See Listing 12.00(C).

17          The ALJ found plaintiff did not meet or equal the paragraph B criteria.

18  Specifically, the ALJ found mild restrictions in activities of daily living and social functioning

19  
_____

20          [3] The Social Security Regulations "Listing of Impairments" ("the Listings") is comprised
    of impairments to certain categories of body systems that are severe enough to preclude a person
21  from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20
    C.F.R. § 416.920(d).  Conditions described in the listings are considered so severe that they are
22  irrebuttably presumed disabling.  20 C.F.R. § 416.920(d).  In meeting or equaling a listing, all the
    requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).
23          To meet a listed impairment, plaintiff bears the burden of establishing that she meets each
    characteristic of a listed impairment relevant to her claim.  See Burch v. Barnhart, 400 F.3d 676,
24  683 (9th Cir. 2005).  To equal a listed impairment, a claimant must establish symptoms, signs
    and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant
25  listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most
    like" the claimant's impairment.  20 C.F.R. § 416.926.  A finding of equivalence must be based
26  on medical evidence only.  20 C.F.R. § 416.929(d)(3).

1   and moderate difficulties in concentration, persistence and pace.  AT 23-24.  The ALJ also found

2   plaintiff had not experienced repeated episodes of decompensation.[4]  AT 24.  Plaintiff disputes

3   these findings, contending that the evidence demonstrates that she has marked limitations.

4           With respect to activities of daily living, the regulations direct that ALJ should

5   consider adaptive activities such as cleaning, shopping, cooking, taking public transportation,

6   paying bills, maintaining a residence, caring appropriately for one's grooming and hygiene, using

7   telephones and directories, and using a post office.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1,

8   12.00C(1).  These activities are assessed by their quality in terms of independence,

9   appropriateness, effectiveness, and sustainability.  Id.  Also considered is the extent to which

10  plaintiff can initiate and participate in these activities independent of supervision or direction.  Id.

11          The ALJ considered plaintiff's testimony that she was able to handle her son's

12  supplemental security income and that she took public transportation.  AT 23, 68.  The ALJ also

13  relied on a third party report of a mental health specialist, who had had numerous contacts with

14  plaintiff, indicating that plaintiff was able to take public transportation, could prepare light meals

15  for herself, and do light cleaning.  AT 24, 177 (plaintiff's report), 183-191(third party report).

16  Plaintiff contends that various Global Assessment of Functioning ("GAF")[5] scores, ranging from

17  35 to 54, demonstrate a marked restriction in activities of daily living.  AT 268, 360, 401, 478,

18  519, 526.  Plaintiff's reliance on these scores is misplaced.  The GAF does not correlate to the

19

20      [4]  The regulations define "repeated episodes of decompensation, each of extended
21  duration" as "three episodes within 1 year, or an average of once every 4 months, each lasting for
    at least 2 weeks."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C(4).

22      [5]  GAF is a scale reflecting the "psychological, social, and occupational functioning on a
    hypothetical continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental
23  Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A GAF of 31-40 indicates: "Some impairment
    in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR
24  major impairment in several areas, such as work or school, family relations, judgment, thinking,
    or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child
25  frequently beats up younger children, is defiant at home, and is failing at school.)"  Id.  A 41-50
    rating indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious
26  impairment in social, work, or school functioning.

                                            6

severity assessments utilized in Social Security disability determinations.[6]  There is no indication

in the medical records that the assessed GAFs were based on marked restrictions in the activities

of daily living.

        With respect to social functioning, the ALJ assesses plaintiff's capacity to interact

independently, appropriately, effectively, and on a sustained basis with other individuals.  See 20

C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C(2).  The ALJ found that plaintiff had mild difficulties in

her social functioning and relied on plaintiff's reports that she spends time daily with others by

talking on the phone or in person and feels better when she socializes.  AT 24, 179, 513.  The

ALJ also noted the third party report which indicated that plaintiff spent time talking with others.

AT 24, 188.

        The ALJ also considered plaintiff's testimony regarding her own social

functioning, including social limitations that she reported to various practitioners, and found her

not entirely credible after setting forth extensive reasons which are supported in the record.  AT

29-31.  It is within the province of the ALJ to determine plaintiff's credibility and assign weight

accordingly.  See e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995) (ALJ determines

whether a claimant is credible, and court defers to the ALJ's discretion if the ALJ used the proper

process and provided proper reasons).  The ALJ noted numerous inconsistencies between

---

   [6]  65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

      Comment: Two commenters recommended that we discuss the Global
Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D.  They
noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and
seemed to encourage its use, but then failed to mention it in the proposed rules.
      Response: We did not adopt the comment.  We did not mention the GAF scale to
endorse its use in the Social Security and SSI disability programs, but to indicate why the third
sentence of the second paragraph of proposed 12.00D stated that an individual's medical source
"normally can provide valuable additional functional information."  To assess current treatment
needs and provide a prognosis, medical sources routinely observe and make judgments about an
individual's functional abilities and limitations.  The GAF scale, which is described in the
DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by
the American Psychiatric Association.  It does not have a direct correlation to the severity
requirements in our mental disorders listings.

1  plaintiff's testimony and the medical records and reports of third parties.

2          Plaintiff also contends that the report of Dr. Wilkenfield, who conducted a

3  comprehensive psychological evaluation of plaintiff on February 1, 2007, supports a finding of

4  marked limitations in social functioning.  AT 238-248.  The ALJ accorded "great weight" to Dr.

5  Wilkenfield's opinions regarding plaintiff's credibility and properly gave little weight to his

6  opinions regarding plaintiff's functionality as this consulting psychologist examined plaintiff

7  only once and did not have access to plaintiff's subsequent medical records which demonstrated

8  that plaintiff responded well to medication, with stabilized mood and better functionality.  AT

9  27, 253, 269, 363, 379, 503, 504, 513, 524.  Similarly, the ALJ properly rejected the opinion of

10  treating physician Dr. Loo as that opinion did not factor into the assessment the effect of drugs

11  and addiction issues on plaintiff's functionality and because it was inconsistent with the

12  longitudinal evidence in the medical record.  AT 29, 528-529.  The ALJ appropriately relied on

13  the opinion of consulting examiner Dr. Canty, who opined that plaintiff had no psychiatric

14  limitations in the absence of substance abuse, and whose opinion is consistent with the record as

15  a whole.  AT 29, 423-426.

16          Plaintiff further asserts that evidence of hospitalization for mental health issues

17  supports a finding of marked restrictions in social functioning.  However, as discussed by the

18  ALJ, treatment records indicate that the hospitalizations were mainly due to lack of medication

19  and upon return to treatment, plaintiff's mood, affect and functioning all stabilized.  AT 28, 253-

20  257, 371.

21          Plaintiff also contends the ALJ erroneously assessed a moderate limitation in

22  concentration, persistence or pace.  This category of functioning refers to plaintiff's ability to

23  sustain focused attention and concentration sufficiently long to permit the timely and appropriate

24  completion of tasks commonly found in work settings.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1,

25  12.00C(3).  As discussed above, the ALJ properly gave limited credence to plaintiff's allegations

26  of her functioning.  In determining that plaintiff had a moderate limitation in concentration,

1   persistence and pace, the ALJ noted plaintiff's report that she enjoyed reading and watching TV.

2   AT 24, 179.  As with the assessment in the other functional areas, the ALJ properly relied on the

3   opinion of Dr. Canty, which is consistent with the record as a whole.  AT 426; see also AT 241

4   (Dr. Wilkenfield found plaintiff's ability to sustain attention mildly impaired); AT 359 (attention

5   and concentration assessed as "impaired" but not markedly).  There was no error in the ALJ's

6   assessment of the first three paragraph B criteria.

7           With respect to the fourth criterium, i.e. repeated episodes of decompensation,

8   each of extended duration, the ALJ found that plaintiff experienced two episodes of

9   decompensation within one year, and each of extended duration.  AT 24, 28 (episodes in January

10  and March, 2008).  Two episodes do not bring plaintiff within the severity requirements of the

11  Listings.  Plaintiff argues that there were, in fact, three episodes of decompensation and points to

12  plaintiff's admittance to North Valley Behavioral Health in August of 2009.  The episode in

13  2009, however did not occur within one year of the prior episodes; nor did the three episodes,

14  taken together, occur on an average of every four months.  AT 251, 267, 487.  Plaintiff

15  accordingly has not met her burden of showing that she meets or equals the paragraph B criteria

16  for her claimed mental impairments.

17      B.  Physical Impairments

18          Plaintiff contends that the ALJ improperly relied on the assessment of a state

19  agency physician in determining plaintiff's physical limitations.  The ALJ set forth an extensive

20  summary of the medical records as they pertain to plaintiff's alleged physical impairments.  AT

21  25-27.  The ALJ noted that both consultative physicians who assessed plaintiff's physical

22  limitations assessed no functional limitations.  AT 26, 340-344, 407-411.  Giving plaintiff the

23  benefit of the doubt, considering the multiple alleged physical impairments, the ALJ credited the

24  opinion of the non-examining state agency physician, who assessed physical limitations

25  consistent with light work.  AT 27, 29, 414-417, 422.  Although that opinion was rendered in

26  December, 2008, the later imaging studies of plaintiff's lumbar spine do not undermine the

9

1   conclusions of the state agency physician.  AT 26, 485 (July, 2009 lumbar imaging showed mild

2   degenerative change), 486 (August, 2009 MRI showed "central disc protrusion of L5-S1

3   associated with facet arthropathy does not result in spinal stenosis or nerve root compression").

4   The ALJ also noted that plaintiff did not receive the type of medical treatment one would expect

5   for a totally disabled individual.  AT 25.  The opinion of treating physician Dr. Saltzman (which

6   was rendered in May, 2009 prior to the imaging studies) was properly rejected as it was

7   inconsistent with the record as a whole and unsupported by objective findings.  AT 27, 483-484.

8   See  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

9   minimally supported opinion rejected).  There was no error in the ALJ's assessment of plaintiff's

10   physical limitations.

11          C. Evidence Submitted to Appeals Council

12          Medical records dated August 1, 2010 to September 29, 2011 were submitted to

13   the Appeals Council and made part of the administrative record.  AT 6, 593-610.  The records

14   reflect mental health treatment of plaintiff after the date of the ALJ's decision.  Plaintiff contends

15   these records support her claim of disability.

16          This court has reviewed the ALJ's decision under the substantial evidence

17   standard with due consideration of these medical records.  See Harman v. Apfel, 211 F.3d 1172,

18   1179-80 (9th Cir. 2000) (where plaintiff submitted additional materials to the Appeals Council in

19   requesting review of the ALJ's decision, court may properly consider the additional materials

20   because the Appeals Council addressed them in the context of denying plaintiff's request for

21   review); see also Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (noting that where the

22   Appeals Council declined to review the decision of the ALJ after examining the entire record,

23   including new material, court considers both the ALJ's decision and the additional materials

24   submitted to the Appeals Council); Brewes v. Commissioner of Social Sec. Admin, 682 F.3d

25   1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding

26   whether to review a decision of the ALJ, that evidence becomes part of the administrative record,

1   which the district court must consider when reviewing the Commissioner's final decision for

2   substantial evidence").

3              The additional records do not support plaintiff's claim of disability.  Plaintiff

4   contends these records demonstrate that plaintiff meets the paragraph B criteria of Listing 12.04

5   because of a suicide attempt in August, 2011.  Plaintiff's brief hospitalization for observation

6   after she made superficial cuts on her wrists cannot be considered to be an extended period of

7   decompensation and in any event, occurred more than two years after the prior episode of

8   decompensation in August, 2009.  AT 487, 598.  Moreover, review of the additional evidence

9   demonstrates that when plaintiff was compliant with her psychotropic medication regimen, she

10  was stable and her symptoms were controlled.  AT 605, 607, 609.  The court concludes that even

11  with consideration of the additional records, substantial evidence supports the ALJ's decision

12  that plaintiff is not disabled.

13  CONCLUSION

14             The ALJ's decision is fully supported by substantial evidence in the record and

15  based on the proper legal standards.  For the reasons stated herein, IT IS HEREBY ORDERED

16  that:

17             1.  Plaintiff's motion for summary judgment (dkt. no. 16) is denied;

18             2.  The Commissioner's cross-motion for summary judgment (dkt. no. 19) is

19  granted; and

20             3.  Judgment is entered for the Commissioner.

21   Dated: February 25, 2013

22                                                    _____
                                                     CAROLYN K. DELANEY
23                                                   UNITED STATES MAGISTRATE JUDGE

24

25

26  4 villa0094.ss